# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. <u>24-cv-03400-STV</u>

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*3:44 pm, Mar 14, 2025*
**JEFFREY P. COLWELL, CLERK**

JANE ROE,

     Plaintiff,

v.

COLORADO JUDICIAL DEPARTMENT, a division of the State of Colorado;
BRIAN BOATRIGHT, individually, and in his official capacity as Chief Judge of the Colorado Supreme Court;
BRYON LARGE, individually, and in his official capacity as Presiding Disciplinary Judge of the Colorado Supreme Court;
JESSICA YATES, individually, and in her official capacity as Attorney Regulation Counsel of the Colorado Supreme Court;
JACOB VOS, individually, and in his official capacity as Assistant Regulation Counsel of the Colorado Supreme Court;
RHONDA WHITE MITCHELL, individually, and in her official capacity as Senior Assistant Regulation Counsel of the Colorado Supreme Court; and
CHERYL STEVENS, individually and in her official capacity as Clerk of the Colorado Supreme Court,

     Defendant(s).

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO RESTRICT [TO PROCEED UNDER A PSEUDONYM] [ECF NO. 5]

The Plaintiff Jane Roe respectfully submits this Reply in further support of the Motion to Proceed Under a Pseudonym and in response to the Objection filed by the Colorado Freedom of Information Coalition and Eugene Volokh (collectively, "Objectors") [ECF No. 10]. The Objection misapplies controlling precedent and fails to recognize compelling reasons supporting

Plaintiff's request, which include risks of retaliation, professional harm, and infringement of

privacy rights established by the Colorado Supreme Court's own protective measures.

## I.      LEGAL STANDARD FOR PSEUDONYMOUS LITIGATION

The Tenth Circuit recognizes that plaintiffs may proceed under a pseudonym where

anonymity is necessary to protect against retaliation, reputational harm, or invasion of privacy,

particularly in constitutional challenges to government action. *Co. Doe v. Public Serv. Co. of

Colorado*, 662 F.3d 1171, 1175 (10th Cir. 2011); *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th

Cir. 2000). Courts balance several factors, including: (1) Whether the lawsuit involves highly

sensitive, personal matters; (2) Whether identification poses a risk of retaliatory harm; (3)

Whether the suit challenges governmental action; (4) Whether the plaintiff is uniquely

vulnerable; and (5) Whether public interest would be furthered by disclosure. *Id*. These factors

strongly favor allowing Plaintiff to proceed under a pseudonym.

## II.      ARGUMENT

### A.      THE OBJECTOR'S STANDING TO CHALLENGE PSEUDONYMITY IS UNCLEAR

The Objector purports to represent himself and an "association" but has not identified its

members or their direct interest in Roe's identity.  In addition, Mr. Volokh has misrepresented

himself to this court.  He is **not a law professor at Stanford University**, **nor is he affiliated

with Stanford University as an attorney before this court**.  Rather, Mr. Volokh is a law

professor and employee of UCLA. *See Exhibit 1*. .  At most, Mr. Volokh is a research fellow at

2

the Hoover Institute, which is not the same as the University.  He is using the Stanford University name to bolster his credibility and status in the eyes of the court, but this is a false pretense.

Mr. Volkh also misrepresented to the Court that a list of the members of the association he purportedly represents is available on its website.  This is false.  In fact, Mr. Volokh refused to provide the complete list of the members of the association or authorization from the association to represent it.  *See Exhibit 2*.  Moreover, Mr. Volokh cannot properly appear pro se and as counsel of record in this matter.

The objections raised by the Colorado Freedom of Information Coalition and Eugene Volokh emphasize transparency but fail to demonstrate a specific, tangible interest that outweighs the potential harm to Jane Roe.  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980).   Mr. Volokh does not express an interest in the constitutional claims.  Rather, his argument is based solely on the facts supporting the disciplinary action that forms the basis for Roe's Constitutional claims.  But Mr. Volokh is not a licensed Colorado Attorney and does not have any expertise or experience in Colorado Attorney regulation matters.  Neither does the unidentified Colorado Coalition.

Mr. Volokh claims to be constitutional scholar, yet he does not say anything about the constitutional issues and infringement on the access to justice, which are the basis for this action. He claims to need access to the underlying decisions, but the public decisions are already public. Notably, there is no record that Mr. Volokh wrote about the published decisions when they were published. Nothing about this action or Roe's anonymity here hinders the access to those

decisions or restricts Objector's academic interest or freedom to write about them.  The motion to restrict also does not seek to restrict those decisions.

The state court has a procedure to gain access to the suppressed disability decision, and Mr. Volokh has not availed himself of that procedure—arguably this motion is an attempt to thwart the procedural safeguards established by the Colorado Supreme Court, because he is not licensed to practice law in Colorado.

The media does not have an absolute right to publish misleading information anor to taint the jury pool by focusing on a small part of this 240-paragraph complaint while ignoring the constitutional issues at stake.  Ironically, the objectors are anonymous—which makes it impossible for Roe to adequately respond to the objection.  Their academic interest in the case is irrelevant, lacks expertise, and does not justify the potential harm she faces, particularly given the risks of retaliation and professional harm.  Rather, the stated interest of the Objectors is merely a form of trolling that will serve no purpose other than to interfere with the judicial process and preclude Roe from obtaining a fair trial with an unbiased jury pool in this court.  The court should consider whether the objectors have misrepresented their standing and interests. *Doe v. City of Albuquerque*, 667 F.3d 1111 (10th Cir. Jan. 2012).

Furthermore, because the objector is not a party to the litigation, their objection should be given little weight in comparison to Roe's well-documented need for anonymity. *See Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (noting that non-parties have limited ability to challenge pseudonymity).  The Objector lacks credibility and transparency—in a matter in which they argue the public's right to know.   Having failed to establish a concrete, particularized harm resulting from Roe's anonymity, the objection lacks standing under *Warth v. Seldin*, 422 U.S.

4

490, 498 (1975).  Accordingly, the Court should give no weight to the Objection, and should disregard it entirely.

      B.     DISCLOSING JANE ROE'S IDENTITY IN THIS FEDERAL LAWSUIT WOULD VIOLATE HER DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT BY SUBJECTING HER TO FURTHER REPUTATIONAL, PSYCHOLOGICAL, EMOTIONAL, AND ECONOMIC HARM, AS HER PRIVACY INTERESTS OUTWEIGH THE PUBLIC INTEREST IN THIS CASE.

The objectors, including the Colorado Freedom of Information Coalition and Eugene Volokh, argue for public transparency and academic interest. However, the First Amendment guarantees implicated in public access to judicial proceedings do not necessitate the disclosure of Jane Roe's identity. *U.S. Const. amend. I.*  The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical, as established in *Doe v. Stegall.  Doe v. Stegall*, 653 F.2d 185-186. (citing *Southern Methodist University Ass'n v. Wynne & Jaffe,* 599 F.2d 707, 712-13 nn.8, 9, 10, 11 & 12 (5th Cir. 1979).

Furthermore, disclosing Jane Roe's identity would exacerbate the very harms she seeks to remedy, including reputational, psychological, emotional, and economic damages. This would violate her due process rights under the Fourteenth Amendment, as it would subject her to further harm without serving a compelling public interest. *U.S. Const. amend. XIV*, § 1.  The potential for such harm is precisely why the Colorado Supreme Court has already ruled in favor of maintaining her privacy.

In conclusion, the balance of interests clearly favors allowing Jane Roe to proceed anonymously. Her significant privacy interests, the potential for further harm, and the focus on constitutional issues rather than personal identity all support the granting of her motion to

proceed under a pseudonym. *Doe v. Stegall*, 653 F.2d at 185  The court should uphold her due process rights by protecting her identity in this federal lawsuit.  *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (Feb. 1976).

      C.      FORCING JANE ROE TO REVEAL HER IDENTITY WOULD EXPOSE HER TO A CREDIBLE RISK OF RETALIATION AND HARM,

The court must recognize the credible risk of retaliation that Jane Roe faces if her identity is disclosed. Her allegations of threats to her safety and professional harm are not speculative; they are grounded in her past experiences with individuals involved in her disbarment. The potential for these threats to materialize is substantial, and the court must weigh this risk heavily in its decision-making process. The precedent set in *M.M. v. Zavaras* supports the notion that privacy interests can outweigh the public's right to know, especially when there is a credible risk of harm. *M.M. v. Zavaras*, 139 F.3d 798, 1998 Colo. J. C.A.R. 1334, 40 Fed. R. Serv. 3d 498 (10th Cir. Mar. 1998).

The balancing of privacy interests against the public interest in transparency must favor Jane Roe. The Colorado Supreme Court has already determined that the privacy interests in attorney disability proceedings are significant, and this determination should guide the court's analysis. The objectors, including the Colorado Freedom of Information Coalition and Eugene Volokh, have not demonstrated a compelling state interest that would justify overriding Jane Roe's privacy interests, as required by *National Ass'n for the Advancement of Colored People v. Alabama Ex Rel. Patterson*. *National Ass'n for the Advancement of Colored People v. Alabama Ex Rel. Patterson*, 357 U.S. 449, 2 L. Ed. 2d 1488, 78 S. Ct. 1163 (Jun. 1958).

Alternative protective measures are insufficient to mitigate the risk of harm to Jane Roe. *Doe v. Stegall*, 653 F.2d. at 185-186.   Pseudonymity is the least restrictive means to protect her interests while allowing her to proceed with her claims. *Roe v. Wade*, 410 U.S. 113 (Jan. 1973). The court must ensure that Jane Roe can litigate her constitutional claims without fear of retaliation or harm, thereby upholding her right to access the courts. *First Amendment to the United States Constitution.*

In conclusion, the court should grant Jane Roe's motion to proceed under a pseudonym. The need to protect her identity outweighs the public interest in transparency, particularly given the constitutional nature of her claims and the credible risks of retaliation and professional harm. This decision aligns with the principles of ensuring access to the courts and protecting individuals from harm, as emphasized in the cited relevant case law.

D.      OBJECTORS' RELIANCE ON COE IS MISPLACED

Objectors argue that *Coe v. U.S. District Court for the District of Colorado*, 676 F.2d 411 (10th Cir. 1982), bars pseudonymity in cases involving professional discipline challenges. However, *Coe* is distinguishable for two reasons:

First, unlike in *Coe*, Roe does not solely challenge professional discipline; rather, Roe's Complaint details constitutional violations including due process, First Amendment retaliation, disability discrimination, and equal protection violations committed by state judicial actors. *See Compl.* ¶¶ 86-90.  Roe's complaint alleges that Defendants engaged in systemic judicial misconduct, bias, and unconstitutional restrictions on her ability to litigate. Courts consistently distinguish constitutional litigation from simple challenges to professional discipline, and

recognize that constitutional claims against misconduct by government actors often justify pseudonymity. *See M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998).

Second, Coe concerned a medical doctor's personal reputation in the context of patient safety, but **did not include Constitutional claims**.  This case, by contrast, involves fundamental violations of Roe's constitutional rights and systemic flaws in judicial regulation. The systemic misconduct alleged by Roe involves significant privacy interests and systemic public issues far beyond the professional discipline context of *Coe*.  Coe, therefore, does not apply to the real issues in this case that warrant Roe's anonymity here.

The Tenth Circuit has never categorically barred pseudonymity in all professional discipline-related cases.  More importantly, the Tenth Circuit has explicitly allowed pseudonymity in cases involving constitutional challenges against government actors. *See M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998) (government transparency concerns do not automatically outweigh a plaintiff's need for anonymity, especially in constitutional litigation).

E.    THE PUBLIC INTEREST IN THE CONSTITUTIONAL ISSUES DOES NOT REQUIRE DISCLOSURE OF ROE'S IDENTITY

The objector argues that Roe's identity must be disclosed so the public can assess the validity of the underlying disability and disciplinary decisions made by the Colorado State Supreme Court. Objectors claim that knowing Roe's identity is necessary to assess the validity of her disciplinary proceedings and any alleged vexatious litigation history. This argument must fail.

The Public interest is best served by evaluating the constitutional propriety of the Defendants' actions rather than Roe's personal identity. Courts emphasize scrutiny of

governmental actions, not individual litigants, as the key public interest. *See Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981); *M.M. v. Zavaras*, 139 F.3d at 803. The public's primary interest lies in scrutinizing whether the Colorado judiciary violated constitutional rights, not Roe's personal history. Roe's Complaint raises critical issues of judicial misconduct, unconstitutional bias, discrimination, and denial of due process, all of which can—and should—be adjudicated independently of Roe's identity.  Courts have held that pseudonymity does not impede legal scrutiny when the case concerns government accountability. *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981).

The merits of Roe's constitutional claims are fully litigable regardless of Roe's name. Roe's identity has already been restricted by the Colorado Supreme Court's confidentiality provisions for disability proceedings. Revealing her identity publicly now would circumvent those protections without furthering legitimate public interests.   Courts routinely allow pseudonymity in cases involving fundamental rights, including challenges to government action. *See Femedeer*, 227 F.3d at 1246 (recognizing that pseudonymity does not inherently undermine the legitimacy of constitutional claims).

Additionally, the Objector fails to demonstrate how Roe's identity is necessary for public interest purposes. The public has a right to access the legal arguments and court rulings in this case, but not an unfettered right to Roe's personal information. The Tenth Circuit has rejected similar objections where public scrutiny of the case itself, rather than the individual plaintiff, satisfies transparency concerns. *See Co. Doe*, 662 F.3d at 1175.  Federal courts routinely permit pseudonymity in cases involving constitutional rights, even where state law mandates disclosure in other contexts.  *See Doe v. Madison School Dist. No. 321*, 147 F.3d 832 (9th Cir. 1998).

The fact that Colorado published Roe's disciplinary record does not mean this federal court must require Roe to litigate under her real name, especially given the constitutional claims at stake.  Moreover, the Colorado Supreme Court has defined attorney disability proceedings as confidential.  Roe's identity has already been protected under Colorado Supreme Court rules governing confidentiality in disability and disciplinary cases. Revealing Roe's identity would contradict those existing state confidentiality protections without furthering meaningful public interests.

The public's understanding of the case will not be materially affected by her anonymity, as the focus should remain on the constitutionality of the defendants' actions rather than the personal details of the plaintiff. *Fourteenth Amendment, Section 1.*  Precedent supports the allowance of pseudonymity in cases involving highly sensitive and personal matters, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.  Jane Roe's situation meets these criteria, as the potential harm from disclosure is both severe and likely, outweighing the general presumption of open trials.  The objections raised by the Colorado Freedom of Information Coalition and Eugene Volokh, citing public transparency and academic interest, do not sufficiently counterbalance the pressing need for Jane Roe's anonymity. *Roe v. Wade*, 410 U.S. 113.  The public interest is better served by ensuring that individuals can seek redress for constitutional violations without fear of further harm, thereby upholding the integrity of the judicial process. *Doe v. Stegall*, 653 F.2d. at 185.

F.    ROE FACES A REAL AND SIGNIFICANT RISK OF RETALIATION AND ADDITIONAL REPUTATIONAL HARM

Objectors contend that reputational harm is insufficient to justify pseudonymity, citing *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240 (10th Cir. 1989). This argument overlooks the crucial distinctions that render the *Gibbs* case inapposite:

Roe is not seeking to conceal past misconduct but to protect against ongoing and future professional harm. Roe's Complaint outlines how Defendants' actions have already harmed her professional standing and could cause further retaliation. Roe faces genuine threats of retaliation, significant professional harm, and reputational damage, precisely because she is litigating constitutional violations committed by judicial officials who exercise direct influence over Roe's professional licensing and future career opportunities.

Roe's Complaint describes concrete examples of retaliation and harm already suffered due to Defendants' actions. Roe specifically alleges systemic retaliation, improper judicial bias, and ongoing professional harm directly attributable to Defendants' misconduct, demonstrating a genuine and immediate risk of further harm if her identity is revealed. Compl. ¶¶ 86-90.  Further disclosure of her identity would aggravate those harms, undermining the very redress Roe seeks in this litigation.

Courts have recognized that plaintiffs challenging government action may face significant retaliation and therefore warrant anonymity.  *Doe v. Frank*, 951 F.2d at 323.  Given that Roe is litigating against the judiciary itself, an entity with immense influence over legal professionals, the risk of professional and economic harm is particularly acute.   See *Co. Doe v. Public Serv. Co. of Colorado*, 662 F.3d 1171 (10th Cir. 2011).  The Objectors are a very real example of this type of retaliation.  Their identity is not known, nor is the true objective for their

objection.  From the content of the objection, it appears that the Objectors seek information not to examine the constitutional violations of the government, but to further harm Roe in a very real and public way outside of the judicial process.

Courts consistently acknowledge pseudonymity as justified where retaliation and economic harm are genuine risks, particularly when challenging powerful governmental institutions. The Tenth Circuit recognizes pseudonymity as justified when plaintiffs challenge governmental actions where retaliation and ongoing professional harm are genuine threats. See *Co. Doe v. Public Serv. Co. of Colorado*, 662 F.3d 1171 (10th Cir. 2011).  Fear of retaliation, particularly in a profession where reputation and licensing are controlled by the defendants, is a compelling reason to allow pseudonymity.

Unlike typical defamation or employment cases cited by Objectors, Roe's claims directly implicate judicial misconduct and retaliatory use of judicial power to suppress constitutional rights.  Roe challenges actions of the Colorado judiciary, an institution with direct influence over legal professionals and public perception. Given the nature of Roe's claims and prior history with the judicial system, identification could result in retaliation or reputational harm, either formally or informally. Courts have repeatedly found that potential retaliation—particularly from government entities—supports pseudonymity. *Co. Doe*, 662 F.3d at 1175; *M.M. v. Zavaras*, 139 F.3d 798, 802 (10th Cir. 1998).

Moreover, exposure could have a chilling effect on future plaintiffs bringing similar constitutional claims against the judiciary. Allowing pseudonymity here would serve the public interest by ensuring access to the courts for those seeking redress against powerful government

actors and the enforcement of their constitutional rights. *See Roe v. Wade*, 410 U.S. 113 (1973); *Doe v. Bolton*, 410 U.S. 179 (1973).

Roe has established that revealing her identity would cause significant prejudice, undermining the relief sought by this litigation. Conversely, Defendants will not suffer harm or prejudice from Roe proceeding anonymously. Courts recognize that defendants are minimally burdened by plaintiff anonymity, provided they have sufficient knowledge for litigation. *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). Here, Roe has already revealed her true name in a Level 1 Restricted document [ECF No. 6], available to the Defendants but not the public. Defendants' knowledge for litigation is unhindered. Defendants can fully defend themselves without publicizing Roe's identity.

Ignoring Roe's privacy rights in these proceedings would be additional constitutional violations.

### 1.     Due Process Considerations

Roe's Due Process rights under U.S. Const. amend. XIV are implicated by any requirement to publicly disclose her true identity. As established in *Doe v. Stegall* and supported by the balancing analysis in *W.N.J. v. Yocom*, a party must be allowed to protect significant privacy interests when disclosure poses non-speculative but demonstrable harm.

The potential for reputational, psychological, emotional, and economic harm—as well as threats to her access to the courts—renders a compelling interest in maintaining anonymity. Forcing disclosure would effectively preclude Roe from seeking redress for serious constitutional violations.

## 2.    First Amendment Implications

Roe's First Amendment right to petition the government for redress of grievances is further endangered by the prospect of public exposure. Case law, including the analysis in *M.M. v. Zavaras*, recognizes that pseudonymity is warranted in circumstances where disclosure would substantially chill protected speech and participation in judicial proceedings.  The focus of this litigation is on the constitutionality of the actions taken by the defendants, not on Roe's personal identity. Disclosure would detract from the substantive issues while exposing Roe to threats of retaliation and professional harm.

In addition, he court in *W.N.J. v. Yocom* recognized that significant privacy interests can justify proceeding anonymously, particularly when public scrutiny could lead to further harm. *W.N.J. v. Yocom*, 257 F.3d 1171, 2001 Colo. J. C.A.R. 3618, 51 Fed. R. Serv. 3d 414 (10th Cir. Jul. 2001).   The Colorado Supreme Court has already determined that Jane Roe's privacy interests outweigh the public interest in proceedings related to her attorney disability status. *Tesmer v. Colorado High School Activities Ass'n*., 140 P.3d 249, 2006 Colo. App. LEXIS 534 (Colo. Ct. App. Apr. 2006).  This determination is highly relevant to the current federal lawsuit, which arises from the same underlying facts as her disbarment and disability determination. The state court's decision underscores the significant privacy interests at stake, which should be respected and upheld in this federal proceeding.

In *Doe v. Stegall*, the court emphasized the need to balance privacy interests against the public's right to open judicial proceedings. *Doe v. Stegall*, 653 F.2d 180, 32 Fed. R. Serv. 2d 59 (5th Cir. Aug. 1981).  The court recognized that significant privacy interests, such as those involving potential harm to a party, can justify proceeding anonymously. Jane Roe's case

involves allegations of retaliation, threats to her access to the courts, and potential physical harm, all of which heighten the need for anonymity to protect her from further harm.

The public interest in this case is better served by focusing on the constitutionality of the defendants' actions rather than Jane Roe's personal identity. As noted in *Doe v. Stegall*, party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them.

> The public right to scrutinize governmental functioning, 100 S.Ct. at 2827, is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself. Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name. These crucial interests served by open trials, *see Richmond Newspapers,* 100 S.Ct. at 2826-29, are not inevitably compromised by allowing a party to proceed anonymously.

*Doe v. Stegall*, 653 F.2d at 185.  The public can still scrutinize the legal and constitutional questions at the heart of this case without knowing Jane Roe's identity.  Jane Roe's privacy interests in the personal and intimate nature of her disability—which is already recognized by the State of Colorado Supreme Court—outweighs the public interest in her identity, especially since disclosing her identity does not add anything to the public's right to access the subject matter of this case.

### 3.    Title VII and Disability Discrimination Concerns

Roe contends that the actions taken by the Colorado Judicial Department reflect gender-based and disability discrimination. Given that her disbarment was interwoven with determinations of disability, disclosure of her identity would exacerbate the harm she alleges and effectively punish her for her status under Title VII and the Americans with Disabilities Act.

The Colorado Supreme Court's protection of attorney disability proceedings strongly supports the need for confidentiality in the present federal litigation, thereby justifying Roe's request to proceed under a pseudonym.

### 4.    Denial of Access to Courts

Compelling Roe to proceed under her true name would amount to a denial of her access to the courts, in violation of her constitutional rights. In *Christopher v. Harbury*, the Supreme Court recognized that the right of access to the courts is ancillary to the underlying claim. *Christopher v. Harbury*, 536 U.S. 403, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (Jun. 2002). Jane Roe's ability to pursue her constitutional claims is contingent upon her being able to litigate without fear of further harm. Compelling Jane Roe to reveal her identity would unconstitutionally deny her access to the courts by exposing her to further harm, thereby chilling her ability to pursue her constitutional claims. *Roe v. Wade*, 410 U.S. 113 (Jan. 1973). Here, Roe has adequately demonstrated a credible risk of retaliation and other harms that would chill her ability to fully litigate her constitutional claims if her identity were disclosed.

### 5.    Public Accommodation and the Balance of Interests

Although the objectors assert that public transparency is of paramount importance, the public interest in this case is advanced by focusing on the constitutional conduct of the defendants rather than on Roe's identity. The Colorado Supreme Court's recognition of the confidentiality of attorney disability proceedings sets a persuasive precedent that the privacy interests at stake here substantially outweigh any limited public interest in disclosure.

The public's interest in openness is sufficiently served by examining the judicial processes challenged, without the unnecessary exposure of Roe to further retaliation or harm.

G.    ALLEGATIONS OF "VEXATIOUS LITIGATION" DO NOT JUSTIFY DENYING PSEUDONYMITY

Objectors emphasize Roe's labeling as "vexatious" by Colorado courts to oppose pseudonymity. However, Roe's lawsuit explicitly challenges the constitutionality and legitimacy of labeling her as "vexatious" and restricting her access to the courts. *See Compl*. ¶ 90.  Roe's Complaint alleges that Defendants unlawfully restricted her ability to litigate, imposed unconstitutional disciplinary actions, and engaged in biased proceedings that violated due process.   Denying pseudonymity based on the very allegations at issue in this litigation would pre-judge Roe's constitutional claims and unjustly legitimize the serious actions challenged as unconstitutional. Roe alleges that Defendants violated her constitutional right to access the courts by improperly restricting her litigation abilities. This claim requires independent judicial review, not reliance on prior disciplinary decisions.

Courts permit pseudonymity even where plaintiffs had prior litigation restrictions, recognizing that past legal conflicts do not preclude constitutional claims, especially when the plaintiff is challenging constitutional violations.  *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992).  Judicial labeling of a litigant as "vexatious" by a state judiciary does not negate the presence of due process violations and unlawful discrimination. Roe seeks an impartial forum, free from prejudicial assumptions.  Granting Roe's Motion to proceed anonymously is in the interests of justice and the fundamental tenets of the federal judiciary and supported by binding authority.

### III.    CONCLUSION

For the reasons set forth above, Roe respectfully requests that this Court grant her Motion to Proceed Under a Pseudonym. The constitutional issues presented in this case can be fully adjudicated without disclosing Roe's identity, and the risks of retaliation and professional harm outweigh any generalized public interest in disclosure.  The lack of any meaningful prejudice to Defendants or public interest strongly supports granting anonymity in this case.  Denial of this motion would not only expose her to severe and demonstrable harm but would also undermine her fundamental constitutional rights by precluding her access to the courts. Accordingly, Roe prays that this Court permit her to litigate this case without requiring public disclosure of her true identity.

WHEREFORE, the Plaintiff Jane Roe respectfully prays that this Court to:

A. Grant her Motion to Proceed Under a Pseudonym;

B. Permit all filings and proceedings to reference her by the pseudonym designated herein; and

C. Grant such other and further relief in her favor and against the Objectors as the Court deems just and proper.

Dated: Friday, March 14, 2025

Respectfully submitted,

/s/ Jane Roe

Jane Roe, Plaintiff