FILED
**UNITED STATES DISTRICT COURT
DENVER, COLORADO**
*4:23 pm, Mar 25, 2025*
**JEFFREY P. COLWELL, CLERK**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. <u>24-cv-03400-STV</u>

JANE ROE,

     Plaintiff,

v.

COLORADO JUDICIAL DEPARTMENT, a division of the State of Colorado;
BRIAN BOATRIGHT, individually, and in his official capacity as Chief Judge of the Colorado Supreme Court;
BRYON LARGE, individually, and in his official capacity as Presiding Disciplinary Judge of the Colorado Supreme Court;
JESSICA YATES, individually, and in her official capacity as Attorney Regulation Counsel of the Colorado Supreme Court;
JACOB VOS, individually, and in his official capacity as Assistant Regulation Counsel of the Colorado Supreme Court;
RHONDA WHITE MITCHELL, individually, and in her official capacity as Senior Assistant Regulation Counsel of the Colorado Supreme Court; and
CHERYL STEVENS, individually and in her official capacity as Clerk of the Colorado Supreme Court,

     Defendant(s).

---

### PLAINTIFF'S [<u>CORRECTED</u>] REPLY IN SUPPORT OF MOTION FOR LEAVE TO RESTRICT [TO PROCEED UNDER A PSEUDONYM] [ECF NO. 5]

---

The Plaintiff Jane Roe respectfully submits this Corrected Reply in further support of the

Motion to Proceed Under a Pseudonym and in response to the Objection filed by the Colorado

Freedom of Information Coalition and Eugene Volokh (collectively, "Objectors") [ECF No. 10].

The Exhibits to the original reply are incorporated herein by reference.  [ECF No. 23-1 and 23-

2].  The Objection misapplies controlling precedent and fails to recognize compelling reasons

1

supporting Plaintiff's request, which include risks of retaliation, personal and professional harm, and infringement of privacy rights established by the Colorado Supreme Court's own protective measures.

## I.    LEGAL STANDARD FOR PSEUDONYMOUS LITIGATION

Under Rule 10 of the Federal Rules of Civil Procedure, "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a); *see also* Fed. R. Civ. P. 17(a).  No provision in the federal rules permits "suits by persons using fictitious names" or "anonymous plaintiffs." *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989).  However, "exceptional circumstances" may warrant "some form of anonymity in judicial proceedings." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). Exceptional circumstances include those "involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *See Doe v. Wang*, No. 20-cv-02765-RMR-MEH, 2022 WL 89172, 2021 U.S. Dist. LEXIS 250086 (D. Colo. Nov. 8, 2021) (unpublished) In deciding whether to preserve anonymity, the court weighs these exceptional circumstances against the public's interest in access to legal proceedings. *See Femedeer*, 227 F.3d at 1246.  Courts enjoy "discretion [in] allow[ing] a plaintiff to proceed using a pseudonym." *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979).  If a court grants permission for plaintiffs to proceed anonymously, "it is often with the requirement that the real names of the plaintiffs be disclosed to the defense and the court but kept under seal thereafter." *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001).  When no permission is granted, "the federal courts lack

2

jurisdiction over the unnamed parties, as a case has not been commenced with respect to them."

*Free Speech Coal. v. Anderson*, No. 2:23-CV-00287, 2023 WL 4205645, at *2 (D. Utah June 27, 2023)

The Tenth Circuit recognizes that plaintiffs may proceed under a pseudonym where anonymity is necessary to protect against retaliation, reputational harm, or invasion of privacy, particularly in constitutional challenges to government action. *James v. Jacobson,* 6 F.3d 233, 238 (4th Cir. 1993); *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). Courts balance several factors, including: (1) Whether the lawsuit involves highly sensitive, personal matters; (2) Whether identification poses a risk of retaliatory harm; (3) Whether the suit challenges governmental action; (4) Whether the plaintiff is uniquely vulnerable; and (5) Whether public interest would be furthered by disclosure. *Id*. Although Roe need only satisfy one of these factors, all of these factors strongly favor allowing Plaintiff to proceed under a pseudonym.

## II.    ARGUMENT

### A.    THE OBJECTOR'S STANDING TO CHALLENGE PSEUDONYMITY IS UNCLEAR

The Objector purports to represent himself and an "association" but has not identified its members or their direct interest in Roe's identity.  In addition, Mr. Volokh has misrepresented himself to this court.  He is **not a law professor at Stanford University**, **nor is he affiliated with Stanford University as an attorney before this court**.  Rather, Mr. Volokh is a law professor and employee of UCLA. *See Exhibit 1*.  Mr. Volokh claims he is affiliated with Stanford University because he is a research fellow at the Hoover Institute.  However, Mr.

Volokh did not mention the Hoover Institute in his filings or address, and the Hoover Institute is a think tank that is separate from Stanford University  He used the Stanford University name to mislead the court to bolster his credibility and status in the eyes of the court, but this is a false pretense.

Mr. Volkh also misrepresented to the Court that a complete list of the members of the association he purportedly represents is available on its website.  This is false.  Only some of the members are listed.  In fact, Mr. Volokh refused to provide the complete list of the members of the association or authorization from the association to represent it.  *See Exhibit 2*.  It is not at all clear what legitimate interest the Coalition might have in this action, if any.  It appears that Mr. Volokh is hiding the identity of his client and the true purpose of the motion.

Moreover, Mr. Volokh cannot properly appear pro se and as counsel of record in this matter without a written disclosure of potential conflict of interest and a waiver of such conflict.

The objections raised by the Colorado Freedom of Information Coalition and Eugene Volokh emphasize transparency but fail to demonstrate a specific, tangible interest that outweighs the potential harm to Jane Roe.  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980).  Mr. Volokh does not express an interest in the constitutional claims.  Rather, his argument is based solely on the facts supporting the disciplinary action that forms the basis for Roe's Constitutional claims.  But Mr. Volokh is not a licensed Colorado Attorney and does not have any expertise or experience in Colorado Attorney regulation matters.  Neither does the unidentified Colorado Coalition.

Mr. Volokh claims to be constitutional scholar, yet he does not say anything about the constitutional issues and infringement on the access to justice, which are the basis for this action.

4

Despite Mr. Volokh's academic record, neither he nor the Coalition seek to advance or address the very real constitutional issues, including the Colorado Judiciary's unconstitutional infringement on Roe's access to the court system, and the lies upon which they based their decisions. But no. These issues are irrelevant to the Objectors.

Objectors claim to need access to the underlying decisions, but the public decisions are already public. Notably, there is no record that Mr. Volokh wrote about the published decisions when they were published. Nothing about this action or Roe's anonymity here hinders the access to those decisions or restricts Objector's academic interest or freedom to write about them. The motion to restrict does not seek to restrict those decisions. It merely seeks to preserve Roe's privacy interests in the disability proceedings and to have this case tried on the constitutional issues without causing Roe the injury she seeks to redress through this action.

Instead, Mr. Volokh claims he needs to know the identity of Roe to write in support of the judiciary and Defendant's actions. Yet, Mr. Volokh is not a Colorado attorney, has no expertise or experience in such issues, and is therefore wholly unqualified to do so. The media does not have an absolute right to publish misleading information or to taint the jury pool by focusing on a small part of this 240-paragraph complaint while ignoring the constitutional issues at stake. Ironically, the objectors are anonymous—which makes it impossible for Roe to adequately respond to the objection. Their academic interest in the case is irrelevant, lacks expertise, and does not justify the potential harm she faces, particularly given the risks of retaliation and professional harm. Rather, the stated interest of the Objectors is merely a form of trolling that will serve no purpose other than to interfere with the judicial process and preclude Roe from obtaining a fair trial with an unbiased jury pool in this court. The court should

consider whether the objectors have misrepresented their standing and interests. *Doe v. City of Albuquerque*, 667 F.3d 1111 (10th Cir. Jan. 2012).

Furthermore, because the objector is not a party to the litigation, their objection should be given little weight in comparison to Roe's well-documented need for anonymity. *See Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (noting that non-parties have limited ability to challenge pseudonymity). The Objector lacks credibility and transparency—in a matter in which they argue the public's right to know. Having failed to establish a concrete, particularized harm resulting from Roe's anonymity, the objection lacks standing under *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Accordingly, the Court should give no weight to the Objection, and should disregard it entirely.

The state court has a procedure to gain access to the suppressed disability decision, and Mr. Volokh has not availed himself of that procedure—arguably this motion is an attempt to thwart the procedural safeguards established by the Colorado Supreme Court because the Objectors cannot meet the required showing. Also, Mr. Volokh cannot use that procedure because he is not licensed to practice law in Colorado. Nor has he cited any justification to overturn the Colorado Supreme Court's Order suppressing those proceedings from the public. Notably, no one challenged that order in a timely fashion under Colorado law. The time to do so—or appeal the suppression order—expired years ago. Roe's motion to proceed anonymously seeks to comply with and uphold the suppression orders of the Supreme Court here.

B.    DISCLOSING JANE ROE'S IDENTITY IN THIS FEDERAL LAWSUIT WOULD VIOLATE HER DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT BY SUBJECTING HER TO FURTHER REPUTATIONAL, PSYCHOLOGICAL, EMOTIONAL, AND ECONOMIC HARM, AS HER PRIVACY INTERESTS OUTWEIGH THE PUBLIC INTEREST IN THIS CASE.

The objectors argue for public transparency and academic interest. However, the First Amendment guarantees implicated in public access to judicial proceedings do not necessitate the disclosure of Jane Roe's identity. *U.S. Const. amend. I.*  The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical, as established in *Doe v. Stegall*.  *Doe v. Stegall*, 653 F.2d 185-186. (citing *Southern Methodist University Ass'n v. Wynne & Jaffe,* 599 F.2d 707, 712-13 nn.8, 9, 10, 11 & 12 (5th Cir. 1979).

Furthermore, disclosing Jane Roe's identity would exacerbate the very harms she seeks to remedy, including reputational, psychological, emotional, and economic damages. This would violate her due process rights under the Fourteenth Amendment, as it would subject her to further harm without serving a compelling public interest. *U.S. Const. amend. XIV*, § 1.  The potential for such harm is precisely why the Colorado Supreme Court has already ruled in favor of maintaining her privacy.

In conclusion, the balance of interests clearly favors allowing Jane Roe to proceed anonymously. Her significant privacy interests, the potential for further harm, and the focus on constitutional issues rather than personal identity all support the granting of her motion to proceed under a pseudonym. *Doe v. Stegall*, 653 F.2d at 185  The court should uphold her due process rights by protecting her identity in this federal lawsuit.  *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (Feb. 1976).

C.   FORCING JANE ROE TO REVEAL HER IDENTITY WOULD EXPOSE HER TO A CREDIBLE RISK OF RETALIATION AND HARM,

The court must recognize the credible risk of retaliation that Jane Roe faces if her identity is disclosed. Her allegations of threats to her safety and professional harm are not speculative; they are grounded in her past experiences with individuals involved in her disbarment. The potential for these threats to materialize is substantial, and the court must weigh this risk heavily in its decision-making process. The precedent set in *M.M. v. Zavaras* supports the notion that privacy interests can outweigh the public's right to know, especially when there is a credible risk of harm. *M.M. v. Zavaras*, 139 F.3d 798, 1998 Colo. J. C.A.R. 1334, 40 Fed. R. Serv. 3d 498 (10th Cir. Mar. 1998).

The balancing of privacy interests against the public interest in transparency must favor Jane Roe. The Colorado Supreme Court has already determined that the privacy interests in attorney disability proceedings are significant, and this determination should guide the court's analysis. The objectors, including the Colorado Freedom of Information Coalition and Eugene Volokh, have not demonstrated a compelling state interest that would justify overriding Jane Roe's privacy interests, as required by *National Ass'n for the Advancement of Colored People v. Alabama Ex Rel. Patterson*. *National Ass'n for the Advancement of Colored People v. Alabama Ex Rel. Patterson*, 357 U.S. 449, 2 L. Ed. 2d 1488, 78 S. Ct. 1163 (Jun. 1958).

Alternative protective measures are insufficient to mitigate the risk of harm to Jane Roe. *Doe v. Stegall*, 653 F.2d. at 185-186.   Pseudonymity is the least restrictive means to protect her interests while allowing her to proceed with her claims. *Roe v. Wade*, 410 U.S. 113 (Jan. 1973). The court must ensure that Jane Roe can litigate her constitutional claims without fear of

retaliation or harm, thereby upholding her right to access the courts. *First Amendment to the United States Constitution*.

In conclusion, the court should grant Jane Roe's motion to proceed under a pseudonym. The need to protect her identity outweighs the public interest in transparency, particularly given the constitutional nature of her claims, the privacy of the disability proceeding as ordered by the state court, and the credible risks of retaliation and professional harm. This decision aligns with the principles of ensuring access to the courts and protecting individuals from harm, as emphasized in the cited relevant case law.

### D.    OBJECTORS' RELIANCE ON COE IS MISPLACED

Objectors argue that *Coe v. U.S. District Court for the District of Colorado*, 676 F.2d 411 (10th Cir. 1982), bars pseudonymity in cases involving professional discipline challenges. However, *Coe* is distinguishable for two reasons:

First, unlike in *Coe*, Roe does not solely challenge professional discipline; rather, Roe's Complaint details constitutional violations including due process, First Amendment retaliation, disability discrimination, and equal protection violations committed by state judicial actors. *See Compl*. ¶¶ 86-90.  Roe's complaint alleges that Defendants engaged in systemic judicial misconduct, bias, and unconstitutional restrictions on her ability to litigate. Courts consistently distinguish constitutional litigation from simple challenges to professional discipline, and recognize that constitutional claims against misconduct by government actors often justify pseudonymity. *See M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998).

Second, Coe concerned a medical doctor's personal reputation in the context of patient safety, but **did not include Constitutional claims**.  This case, by contrast, involves fundamental

violations of Roe's constitutional rights and systemic flaws in judicial regulation. The systemic misconduct alleged by Roe involves significant privacy interests and systemic public issues far beyond the professional discipline context of *Coe*. *Coe*, therefore, does not apply to the real issues in this case that warrant Roe's anonymity here.

The Tenth Circuit has never categorically barred pseudonymity in all professional discipline-related cases.  More importantly, the Tenth Circuit has explicitly allowed pseudonymity in cases involving constitutional challenges against government actors. *See M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998) (government transparency concerns do not automatically outweigh a plaintiff's need for anonymity, especially in constitutional litigation).

E.    THE PUBLIC INTEREST IN THE CONSTITUTIONAL ISSUES DOES NOT REQUIRE DISCLOSURE OF ROE'S IDENTITY

The objector argues that Roe's identity must be disclosed so the public can assess the validity of the underlying disability and disciplinary decisions made by the Colorado State Supreme Court. Objectors claim that knowing Roe's identity is necessary to assess the validity of her disciplinary proceedings and any alleged vexatious litigation history. This argument must fail.  The Public interest is best served by evaluating the constitutional propriety of the Defendants' actions rather than Roe's personal identity. Courts emphasize scrutiny of governmental actions, not individual litigants, as the key public interest. *See Fross v. County of Allegheny,* 2008 WL 4610290, *1 (W.D.Pa.2008); *Doe v. Tandeske,* 2003 WL 24085314, *2 (D.Alaska 2003); Doe v. Heil, No. CIVA08CV02342WYDCBS, 2008 WL 4889550, at *3 (D. Colo. Nov. 13, 2008); and *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981); Free Speech Coal. v. Anderson, No. 2:23-CV-00287, 2023 WL 4205645, at *3 (D. Utah June 27, 2023).  When

evaluating whether this exception applies, courts often consider whether disclosure will have any "bearing on the outcome of [the] case." *See U.S. Dep't of Justice*, 2017 U.S. Dist. LEXIS 34882, at 7. When disclosure provides "little-to-no value to the underlying allegations of the complaint," courts permit plaintiffs to proceed anonymously. *Bd. of Regents of the Univ. of Colo.*, 2022 U.S. Dist. LEXIS 2050, at *11.  Roe falls squarely within the framework of this exception because requiring her to disclose her identity would destroy the very privacy rights she seeks to defend *See U.S. Dep't of Justice*, 2017 U.S. Dist. LEXIS 34882, at *2.  This issue is at the heart of this litigation.  Additionally, requiring Roe to disclose her identity would have little bearing on the outcome of this case. Roe argues her facial challenge regarding the constitutionality of the Defendants' actions "presents purely legal challenges [that may] be decided on dispositive motions," which weakens the public's interest in knowing her identity.  *Free Speech Coal. v. Anderson*, No. 2:23-CV-00287, 2023 WL 4205645, at *3 (D. Utah June 27, 2023). "[B]ecause of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's [sic] identities."   It also does not appear that Defendants' ability to conduct discovery or mount a defense would be impaired by allowing Plaintiff to proceed anonymously.  *Doe v. Heil*, No. CIVA08CV02342WYDCBS, 2008 WL 4889550, at *4 (D. Colo. Nov. 13, 2008)(granting motion to proceed anonymously).

The public's primary interest lies in scrutinizing whether the Colorado Judiciary and the Defendants violated Constitutional rights, not Roe's personal history. Roe's Complaint raises critical issues of judicial misconduct, unconstitutional bias, discrimination, and denial of due process, all of which can—and should—be adjudicated independently of Roe's identity.  Courts have held that pseudonymity does not impede legal scrutiny when the case concerns government

accountability. See, e.g., *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993); *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981); and *Free Speech Coal. v. Anderson*, No. 2:23-CV-00287, 2023 WL 4205645, at *4.

The merits of Roe's constitutional claims are fully litigable regardless of Roe's name. Roe's identity has already been restricted by the Colorado Supreme Court's confidentiality provisions for disability proceedings. Revealing her identity publicly now would circumvent those protections without furthering legitimate public interests.   Courts routinely allow pseudonymity in cases involving fundamental rights, including challenges to government action. *See Femedeer*, 227 F.3d at 1246 (recognizing that pseudonymity does not inherently undermine the legitimacy of constitutional claims).  Federal courts routinely permit pseudonymity in cases involving constitutional rights, even where state law mandates disclosure in other contexts.  *See Doe v. Madison School Dist. No. 321*, 147 F.3d 832 (9th Cir. 1998).

Additionally, the Objector fails to demonstrate how Roe's identity is necessary for public interest purposes. The public has a right to access the legal arguments and court rulings in this case, but not an unfettered right to Roe's personal information. Courts within the Tenth Circuit have rejected similar objections where public scrutiny of the case itself, rather than the individual plaintiff, satisfies transparency concerns.

> The public interest in knowing the litigants' identities in this case is similarly weak. The names of the pseudonym plaintiffs have little bearing on the outcome of this case. While the public has a significant interest in the constitutionality of its government's policies and legislation, the identities of the plaintiffs do not affect the outcome of this litigation. The pseudonym plaintiffs' identities will provide no assistance in determining the constitutionality or unconstitutionality of the Act. For these reasons, the pseudonym plaintiffs fall within this recognized exception.

*Free Speech Coal. v. Anderson*, No. 2:23-CV-00287, 2023 WL 4205645, at *4 (D. Utah June 27, 2023).  Roe has already filed as Restricted her true name, so the Defendants already have notice. [ECF No. 6]

The fact that Colorado published Roe's disciplinary record does not mean this federal court must require Roe to litigate under her real name, especially given the constitutional claims at stake.  Moreover, the Colorado Supreme Court has defined **attorney disability proceedings** as confidential.  Roe's identity has already been protected under Colorado Supreme Court rules governing confidentiality in disability and disciplinary cases. Revealing Roe's identity would contradict those existing state confidentiality protections without furthering meaningful public interests.

The public's understanding of the case will not be materially affected by her anonymity, as the focus should remain on the constitutionality of the defendants' actions rather than the personal details of the plaintiff. *Fourteenth Amendment, Section 1.*  Precedent supports the allowance of pseudonymity in cases involving highly sensitive and personal matters, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.  Jane Roe's situation meets these criteria, as the potential harm from disclosure is both severe and likely, outweighing the general presumption of open trials.  The objections raised by the Colorado Freedom of Information Coalition and Eugene Volokh, citing public transparency and academic interest, do not sufficiently counterbalance the pressing need for Jane Roe's anonymity. *Roe v. Wade*, 410 U.S. 113.  The public interest is better served by ensuring that individuals can seek redress for constitutional violations without

fear of further harm, thereby upholding the integrity of the judicial process. *Doe v. Stegall*, 653 F.2d. at 185.

Because Roe need only demonstrate she falls within one of the exceptional circumstances recognized by the Tenth Circuit, the analysis could end here. The weight of these factors falls in favor of permitting Roe to proceed by pseudonym. Nevertheless, where the pseudonym plaintiff have shown this case involves matters of a highly sensitive and personal nature, this factor is also addressed.

F.    ROE FACES A REAL AND SIGNIFICANT RISK OF RETALIATION AND PERSONAL  HARM

Objectors contend that reputational harm is insufficient to justify pseudonymity, citing *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240 (10th Cir. 1989). This argument overlooks the crucial distinctions that render the *Gibbs* case inapposite:

Roe is not seeking to conceal past misconduct but to protect against ongoing and future professional harm. Roe's Complaint outlines how Defendants' actions have already harmed her professional standing and could cause further retaliation. Roe faces genuine threats of retaliation, significant professional harm, and reputational damage, precisely because she is litigating constitutional violations committed by judicial officials who exercise direct influence over Roe's professional licensing and future career opportunities.

Roe's Complaint describes concrete examples of retaliation and harm already suffered due to Defendants' actions. Roe specifically alleges systemic retaliation, improper judicial bias, and ongoing professional harm directly attributable to Defendants' misconduct, demonstrating a genuine and immediate risk of further harm if her identity is revealed. Compl. ¶¶ 86-90.  Further

disclosure of her identity would aggravate those harms, undermining the very redress Roe seeks in this litigation.

Courts have recognized that plaintiffs challenging government action may face significant retaliation and therefore warrant anonymity. *Doe v. Frank*, 951 F.2d at 323. Given that Roe is litigating against the judiciary itself, an entity with immense influence over legal professionals, the risk of professional and economic harm is particularly acute. . The Objectors are a very real example of this type of retaliation. Their identity is not known, nor is the true objective for their objection. From the content of the objection, it appears that the Objectors seek information not to examine the constitutional violations of the government, but to further harm Roe and interfere with this judicial process in a very real and public way--outside of the judicial process.

Courts consistently acknowledge pseudonymity as justified where retaliation and economic harm are genuine risks, particularly when challenging powerful governmental institutions. The Tenth Circuit recognizes pseudonymity as justified when plaintiffs challenge governmental actions where retaliation and ongoing professional harm are genuine threats. *Free Speech Coal.*, 2023 WL 4205645, at *4. Fear of retaliation, particularly in a profession where reputation and licensing are controlled by the defendants, is a compelling reason to allow pseudonymity.

Unlike typical defamation or employment cases cited by Objectors, Roe's claims directly implicate judicial misconduct and retaliatory use of judicial power to suppress constitutional rights. Roe challenges actions of the Colorado judiciary, an institution with direct influence over legal professionals and public perception. Given the nature of Roe's claims and prior history

with the judicial system, identification could result in retaliation or reputational harm, either formally or informally. Courts have repeatedly found that potential retaliation—particularly from government entities—supports pseudonymity.   See, e.g., *Free Speech Coal. v. Anderson*, No. 2:23-CV-00287, 2023 WL 4205645, at *4, and cases cited therein;  *M.M. v. Zavaras*, 139 F.3d 798, 802 (10th Cir. 1998).

Moreover, exposure could have a chilling effect on future plaintiffs bringing similar constitutional claims against the judiciary. Allowing pseudonymity here would serve the public interest by ensuring access to the courts for those seeking redress against powerful government actors and the enforcement of their constitutional rights. *See Roe v. Wade*, 410 U.S. 113 (1973); *Doe v. Bolton*, 410 U.S. 179 (1973).

Roe has established that revealing her identity would cause significant prejudice and a very real threat of personal harm, undermining the relief sought by this litigation. Conversely, Defendants will not suffer harm or prejudice from Roe proceeding anonymously. Courts recognize that defendants are minimally burdened by plaintiff anonymity, provided they have sufficient knowledge for litigation. *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). Here, Roe has already revealed her true name in a Level 1 Restricted document [ECF No. 6], available to the Defendants but not the public.  Defendants' knowledge for litigation is unhindered. Defendants can fully defend themselves without publicizing Roe's identity.

Ignoring Roe's privacy rights in these proceedings would be additional constitutional violations.

### 1.    Due Process Considerations

Roe's Due Process rights under U.S. Const. amend. XIV are implicated by any requirement to publicly disclose her true identity. As established in *Doe v. Stegall* and supported by the balancing analysis in *W.N.J. v. Yocom*, a party must be allowed to protect significant privacy interests when disclosure poses non-speculative but demonstrable harm.

The potential for reputational, psychological, emotional, and economic harm—as well as threats to her access to the courts—renders a compelling interest in maintaining anonymity. Forcing disclosure would effectively preclude Roe from seeking redress for serious constitutional violations.

### 2.    First Amendment Implications

Roe's First Amendment right to petition the government for redress of grievances is further endangered by the prospect of public exposure. Case law, including the analysis in *M.M. v. Zavaras*, recognizes that pseudonymity is warranted in circumstances where disclosure would substantially chill protected speech and participation in judicial proceedings.  The focus of this litigation is on the constitutionality of the actions taken by the defendants, not on Roe's personal identity. Disclosure would detract from the substantive issues while exposing Roe to threats of retaliation and professional harm.

In addition, he court in *W.N.J. v. Yocom* recognized that significant privacy interests can justify proceeding anonymously, particularly when public scrutiny could lead to further harm. *W.N.J. v. Yocom*, 257 F.3d 1171, 2001 Colo. J. C.A.R. 3618, 51 Fed. R. Serv. 3d 414 (10th Cir. Jul. 2001).   The Colorado Supreme Court has already determined that Jane Roe's privacy interests outweigh the public interest in proceedings related to her attorney disability status. *Tesmer v. Colorado High School Activities Ass'n.*, 140 P.3d 249, 2006 Colo. App. LEXIS 534

(Colo. Ct. App. Apr. 2006).  This determination is highly relevant to the current federal lawsuit, which arises from the same underlying facts as her disbarment and disability determination. The state court's decision underscores the significant privacy interests at stake, which should be respected and upheld in this federal proceeding.

In *Doe v. Stegall*, the court emphasized the need to balance privacy interests against the public's right to open judicial proceedings. *Doe v. Stegall*, 653 F.2d 180, 32 Fed. R. Serv. 2d 59 (5th Cir. Aug. 1981).  The court recognized that significant privacy interests, such as those involving potential harm to a party, can justify proceeding anonymously. Jane Roe's case involves allegations of retaliation, threats to her access to the courts, and potential physical harm, all of which heighten the need for anonymity to protect her from further harm.

The public interest in this case is better served by focusing on the constitutionality of the defendants' actions rather than Jane Roe's personal identity. As noted in *Doe v. Stegall*, party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them.

> The public right to scrutinize governmental functioning, 100 S.Ct. at 2827, is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself. Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name. These crucial interests served by open trials, *see Richmond Newspapers,* 100 S.Ct. at 2826-29, are not inevitably compromised by allowing a party to proceed anonymously.

*Doe v. Stegall*, 653 F.2d at 185.  The public can still scrutinize the legal and constitutional questions at the heart of this case without knowing Jane Roe's identity.  Jane Roe's privacy interests in the personal and intimate nature of her disability—which is already recognized by the State of Colorado Supreme Court—outweighs the public interest in her identity, especially since

18

disclosing her identity does not add anything to the public's right to access the subject matter of this case.

### 3.    Title VII and Disability Discrimination Concerns

Roe contends that the actions taken by the Colorado Judicial Department reflect gender-based and disability discrimination. Given that her disbarment was interwoven with determinations of disability, disclosure of her identity would exacerbate the harm she alleges and effectively punish her for her status under Title VII and the Americans with Disabilities Act.

The Colorado Supreme Court's protection of attorney disability proceedings strongly supports the need for confidentiality in the present federal litigation, thereby justifying Roe's request to proceed under a pseudonym.

### 4.    Denial of Access to Courts

Compelling Roe to proceed under her true name would amount to a denial of her access to the courts, in violation of her constitutional rights. In *Christopher v. Harbury*, the Supreme Court recognized that the right of access to the courts is ancillary to the underlying claim. *Christopher v. Harbury*, 536 U.S. 403, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (Jun. 2002).   Jane Roe's ability to pursue her constitutional claims is contingent upon her being able to litigate without fear of further harm. Compelling Jane Roe to reveal her identity would unconstitutionally deny her access to the courts by exposing her to further harm, thereby chilling her ability to pursue her constitutional claims. *Roe v. Wade*, 410 U.S. 113 (Jan. 1973).  Here, Roe has adequately demonstrated a credible risk of retaliation and other harms that would chill her ability to fully litigate her constitutional claims if her identity were disclosed.

### 5.    Public Accommodation and the Balance of Interests

Although the objectors assert that public transparency is of paramount importance, the public interest in this case is advanced by focusing on the constitutional conduct of the defendants rather than on Roe's identity.  The Colorado Supreme Court's recognition of the confidentiality of attorney disability proceedings sets a persuasive precedent that the privacy interests at stake here substantially outweigh any limited public interest in disclosure.

The public's interest in openness is sufficiently served by examining the judicial processes challenged, without the unnecessary exposure of Roe to further retaliation or harm.

### G.    ALLEGATIONS OF "VEXATIOUS LITIGATION" DO NOT JUSTIFY DENYING PSEUDONYMITY

Objectors emphasize Roe's labeling as "vexatious" by Colorado courts to oppose pseudonymity. However, Roe's lawsuit explicitly challenges the constitutionality and legitimacy of labeling her as "vexatious" and restricting her access to the courts. *See Compl.* ¶ 90.  Roe's Complaint alleges that Defendants unlawfully restricted her ability to litigate, imposed unconstitutional disciplinary actions, and engaged in biased proceedings that violated due process.   Denying pseudonymity based on the very allegations at issue in this litigation would pre-judge Roe's constitutional claims and unjustly legitimize the serious actions challenged as unconstitutional. Roe alleges that Defendants violated her constitutional right to access the courts by improperly restricting her litigation abilities. This claim requires independent judicial review, not reliance on prior disciplinary decisions.

Courts permit pseudonymity even where plaintiffs had prior litigation restrictions, recognizing that past legal conflicts do not preclude constitutional claims, especially when the plaintiff is challenging constitutional violations.   "Requiring [Roe] to proceed without

anonymity would effectively moot the very relief she seeks", which includes, in part, exposing the procedural violations and fabricated facts relied upon by the Defendants in unjustly labeling her as "vexatious." *Patrick Collins, Inc. v. Does 1-38*, 941 F. Supp. 2d 153, 161 (D. Mass. 2013)(quoting *Sunlust Pictures, LLC v. Cisa,* No. 12-CV-00656-CMA-KMT, 2012 WL 5187837, at *3 (D. Colo. Oct. 19, 2012)); *see also Free Speech Coal. v. Anderson*, No. 2:23-CV-00287, 2023 WL 4205645, at *4 ; *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992). Judicial labeling of a litigant as "vexatious" by a state judiciary does not negate the presence of due process violations and unlawful discrimination—especially where, as here, the stated basis for the determination is fiction not fact, and those defamatory statements have been repeated in the media. Roe seeks an impartial forum, free from prejudicial assumptions or deference to decisions borne out of defamation. Granting Roe's Motion to proceed anonymously is in the interests of justice and the fundamental tenets of the federal judiciary and supported by binding authority.

### III.    CONCLUSION

For the reasons set forth above, Roe respectfully requests that this Court grant her Motion to Proceed Under a Pseudonym. The constitutional issues presented in this case can be fully adjudicated without disclosing Roe's identity, and the risks of retaliation and physical harm outweigh any generalized public interest in disclosure. The lack of any meaningful prejudice to Defendants or public interest strongly supports granting anonymity in this case. Denial of this motion would not only expose her to severe and demonstrable harm but would also undermine her fundamental constitutional rights by precluding her access to the courts. Accordingly, Roe

prays that this Court permit her to litigate this case without requiring public disclosure of her true identity.

WHEREFORE, the Plaintiff Jane Roe respectfully prays that this Court to:

A. Grant her Motion to Proceed Under a Pseudonym;

B. Permit all filings and proceedings to reference her by the pseudonym designated herein;

C.  Prohibit Defendants from revealing Plaintiff's true name; and

D. Grant such other and further relief in her favor and against the Objectors as the Court deems just and proper.

Dated: Tuesday, March 25, 2025

Respectfully submitted,

/s/ Jane Roe
Jane Roe, Plaintiff